[Civ. No. 2364. First Appellate District.—May 16, 1918.]

BRADLEY COMPANY (a Corporation), Appellant, v. EMMA R. BRADLEY, Respondent.

PLEADING—EJECTMENT—ENFORCEMENT OF TRUST—CONCURRENT MAINTE-NANCE OF ACTIONS.—An action in ejectment and an action to enforce an alleged trust as to the same parcel of land may be maintained concurrently.

EJECTMENT—CROSS-COMPLAINT QUIETING TITLE—VERDICT ON ISSUES RAISED — FAILURE TO ADOPT — UNSUPPORTED JUDGMENT.—In an action in ejectment to recover two parcels of land, in which the

defendant filed a cross-complaint to quiet title to one of such parcels, a judgment quieting such title cannot be sustained where the cause was tried by a jury and the court did not adopt the verdict or make findings in conformity therewith, although the parties stipulated that the fate of the issues raised by the cross-complaint should be governed by the verdict.

ID.—EQUITY CASE—ADOPTION OF VERDICT—DUTY OF COURT.—In an equity case, or on an equitable issue, the verdict of the jury must be expressly adopted by the court in some unmistakable manner, and findings made by it in conformity to such verdict or in rejection of it, or else the judgment will be reversed as having nothing to support it in such a case or on such an issue.

ID.—JUDGMENT—QUIETING TITLE TO TWO PARCELS OF LAND—SCOPE OF CROSS-COMPLAINT.—In an action in ejectment to recover two parcels of land, a judgment in favor of defendant quieting title to both parcels upon a cross-complaint which sought to have the title quieted as to one parcel only is unwarranted.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing to vacate such judgment.   George H. Cabaniss, Judge.

The facts are stated in the opinion of the court.

Stoney, Rouleau & Stoney, and Orville C. Pratt, Jr., for Appellant.

Charles Baer, for Respondent.

KERRIGAN, J.—This is an appeal from an amended judgment in an action in ejectment and from an order refusing to vacate such judgment.

A brief statement of the facts involved will be conducive to a clearer understanding of the three appeals now pending in this court between these parties in regard to certain property which is the subject of their contention.

Prior to the tenth day of November, 1906, and to the commencement of any of the actions (three in number) pending between these parties, plaintiff's assignor, Richard Bradley, was the owner of two pieces of real property situated in San Francisco. On the date mentioned Bradley made a conveyance of one of these parcels—designated in the record as the Gough Street property—to the defendant, who was at that time single and bore the name of Mrs. E. R. Buxton. The

conveyance was in trust for certain purposes, and the property was to be reconveyed to Bradley upon demand. Thereafter, desiring to procure a decree establishing title to these two pieces of property under the so-called McEnerney Act, and appreciating that it would be more economical to attain this object by one action rather than two, Bradley conveyed to the defendant the parcel of land designated in the record as the Butchertown lot, with the alleged understanding in this instance as in the other that the property would be reconveyed to him. Prior to these transactions the defendant was engaged to marry Bradley, and they were in fact married about three years after the conveyance to her of the Gough Street property. Later they became estranged, and Mrs. Bradley commenced an action for divorce against her husband. About this time she denied her trust relation to the properties, claiming to be the owner of both parcels, and that as to the Gough Street piece she had paid Bradley a certain sum for it. On April 9, 1911, Bradley's assignee (plaintiff) commenced an action against the defendant to enforce the alleged trust as to this parcel. Thereafter, in June, 1911, the plaintiff, not being content to rest on that equitable suit alone, and believing too that a certain deed made by the defendant reconveying the lots should, under the attending circumstances, be deemed to have been delivered to Bradley, in which event the equitable suit would fail, commenced a second suit—the present one—counting on a legal title to both lots.

That it is proper to maintain these two actions concurrently is not disputed. (*O'Connor* v. *Irvine,* 74 Cal. 435–441, [16 Pac. 236]; *South San Bernardino Land etc. Co.* v. *San Bernardino Nat. Bank,* 127 Cal. 245–247, [59 Pac. 699].) In a third suit, filed February 27, 1915, plaintiff sought to enforce the trust as to the Butchertown parcel and to compel its reconveyance by defendant. The status of this case is not before us.

As to the trust suit, which was filed first, a demurrer to the complaint was sustained, but upon appeal the order sustaining the demurrer was, in 1915, reversed. (*Bradley Company* v. *Bradley,* 165 Cal. 237, [131 Pac. 750].)

The present action, being the second one commenced, was tried first, the trial being had before the court sitting with a jury. The verdict went for the defendant, and judgment thereon was entered in her favor on April 7, 1914. On Octo-

ber 6th of that year the trial judge signed an order amending this judgment, which order was not filed or entered in the judgment book until June 21, 1915. In the meantime the parties went to trial in the trust suit, involving the equitable ownership of the Gough Street property. Judgment therein went for the plaintiff, and the same was entered in June, 1915. The appeals are here on separate records, and will be separately considered.

With this introductory statement we will now review the record in the first action tried, namely, the action in ejectment covering both pieces of property.

. The complaint in this action was in form an ordinary complaint in ejectment, in which it is alleged that on and ever since the twentieth day of January, 1908, the plaintiff was the owner and entitled to the possession of the two parcels of land already several times referred to, and that on that date the defendant unlawfully and without right or title entered into possession of the premises and ejected the plaintiff, and has ever since unlawfully withheld the possession thereof from the plaintiff. The prayer was for the restitution of the premises and for damages. In defendant's third amended answer and cross-complaint she first denied the material averments of the complaint, and alleged that she is the owner and in possession of the property involved. She next set forth a matter of special defense, which is unimportant on this appeal. Finally, by way of cross-complaint, she alleged that there was another action pending between the same parties covering the Gough Street property, referring to the action to enforce a trust as to that parcel. She also made the usual averments appropriate to an action to quiet title, setting forth in part that the plaintiff asserted a claim to that property adverse to her title; that such claim was wholly without right and was subject to her title, and that she was the owner of the property and entitled to the possession thereof, and prayed that her title be quieted. To this cross-complaint the plaintiff filed an answer, denying the material allegations thereof.

The cause was tried, and after the testimony was all in and the court had instructed the jury it was stipulated by the parties, at the suggestion of the trial judge, as we understand the matter, that the fate of the issues raised by the cross-complaint and answer thereto should be governed by the verdict of the jury upon the issues framed by the complaint and answer; that

37 Cal. App.—18

the verdict on these issues should be regarded as a determination in favor of the prevailing party on all the issues raised by all the pleadings.

The jury found for the defendant. One week later, on April 7, 1914, and after a discussion with counsel for the plaintiff as to the scope of the stipulation, counsel for the defendant caused a judgment to be entered in favor of defendant in accordance with the tenor of the verdict and without reference to the intent, whatever it may have been, of the stipulation. Six months later, however, and without notice to the plaintiff, counsel for the defendant obtained from the trial judge an order amending the judgment, incorporating therein the stipulation entered into by the parties at the conclusion of the trial. The amended judgment was made to read in accordance with the prayer of defendant's cross-complaint, and her title to both pieces of property was quieted against all claims of the plaintiff. Eight months after the order amending the judgment was made and fourteen months after the original judgment was entered the amended judgment was filed. Thereafter, a motion to set aside the amended judgment having been denied, this appeal was taken.

Notwithstanding the issues that the pleadings may be said to have raised, a review of the record shows that the case was tried exclusively upon the issues framed by the complaint and answer, the important one being as to whether or not the defendant had reconveyed the property to Bradley. Plaintiff showed that the defendant, being the legal owner of the two parcels of property on May 5, 1908, did about that time put in a safe deposit box, to which she gave Bradley access by sending him a key thereto, a deed of conveyance to him of those parcels duly acknowledged; that thereafter Bradley on two different occasions looked at the deed, held it in his hands, and replaced it in the box, from which it was thereafter taken and destroyed by the defendant. The latter, on the other hand, testified that she bought the Gough Street property from Bradley for a valuable consideration, and that the deed of conveyance claimed by plaintiff to have been delivered to Bradley by her was put in the box as stated, but with the understanding that it was to be deemed delivered to him only in case he survived her. She further testified that this arrangement had been rescinded on account of a loss of confidence in Brad-

ley which she suffered after her marriage to him, whereupon she removed and destroyed the deed.

It appears that some evidence crept into the record briefly disclosing the circumstances *pro* and *con* under which the parcels of property were conveyed to the defendant; but the sole contested question in the case in its last analysis was as to whether or not from the facts narrated it should be held that there had been a delivery to Bradley of the deed which had been placed by the defendant in the safe deposit box. No evidence was introduced for the purpose of showing, nor was the case tried on the theory, that the defendant had and plaintiff did not have the equitable title to the property. The record affirmatively shows that throughout the trial no mention was made of the equitable issue raised or purported to be raised by the amended answer and cross-complaint of the defendant and plaintiff's answer thereto, until just before the case was submitted to the jury, when the suggested stipulation heretofore referred to was made by the parties. Under these circumstances it would appear, granting that the stipulation is as broad in its scope as claimed by the defendant, that plaintiff's consent thereto was an excusable inadvertence. Indeed, its possible scope was, apparently, not understood by either party until shortly after the verdict, when it occurred to defendant's counsel that perhaps they were entitled to a judgment in the terms of the amended judgment, and they asked for a stipulation permitting such a judgment to be entered; but counsel for the plaintiff took the position that such a judgment would not be supported by the evidence, that therefore it would be nugatory, and, if entered, they would at once appeal from the same. Defendant's counsel at the time acquiesced in this view, and caused to be entered a judgment in accord with the verdict of the jury. Six months later, however, counsel for defendant, without notice to plaintiff, procured an amended judgment in conformity with the terms of the stipulation referred to, and fourteen months thereafter caused the same to be filed, a decision having meanwhile been rendered in the trust suit in favor of plaintiff.

From what has been said it follows that the verdict on defendant's cross-complaint, if given the scope claimed for the stipulation, is not supported by the evidence in the case.

But there is another point fatal to the amended judgment. Granting that the court could amend the original judgment

without notice and while an appeal was pending; granted that
on the pleadings the issue as to plaintiff's equitable claim was
presented to the jury for its consideration; and granting that
there was evidence on such issue, upon which a verdict in favor
of the defendant could have been based, still we think the part
of the judgment giving defendant the relief prayed for in her
cross-complaint cannot be sustained, for the reason that the
issues which it raised, and the relief therein demanded, were
purely equitable, so that the verdict on the cross-complaint
was merely advisory.  The authorities on this question are
numerous and uniform.  They are all to the effect that in an
equity case, or on an equitable issue, the verdict of the jury
must be expressly adopted by the court in some unmistakable
manner, and findings made by it in conformity to such verdict
or in rejection of it, or else the judgment will be reversed as
having nothing to support it in such a case or on such an
issue.  (See *Warring* v. *Freear,* 64 Cal. 54, [28 Pac. 115] ;
*Learned* v. *Castle,* 67 Cal. 41, [7 Pac. 34] ; *Haggin* v. *Ray-
mond,* 67 Cal. 302, [7 Pac. 721] ; *Bell* v. *Marsh,* 80 Cal. 411,
[22 Pac. 170] ; *Cummings* v. *Ross,* 90 Cal. 68, [27 Pac. 62].)
An inspection of the record in the present case discloses that
no such findings were ever made by the court; and it appears
that they were never waived by the appellant, and that the
court did nothing in the way of adopting the verdict of the
jury so as to give its judicial sanction to the decision.  Under
these circumstances that part of the amended judgment which
gave effect to the stipulated verdict on the cross-complaint
has no legally sufficient findings to support it, and it must be
reversed for want of such findings.

Finally, it remains to be noted that the cross-complaint,
in terms, sought to have the title quieted to the Gough Street
property only, and no relief could, therefore, be granted there-
under so far as the Butchertown parcel was concerned.  The
amended judgment purports to grant such relief.  Further-
more, even if such relief were permissible under the pleadings,
there is no evidence in the record to sustain it.  As to this
lot the defendant did not claim to have bought it, as she did
with reference to the Gough Street lot; and the uncontradicted
evidence is that it was conveyed without consideration to de-
fendant by Bradley for the purpose of permitting one decree
to be obtained covering both lots, as before stated, and upon

the obvious understanding that she should reconvey it to him when that object had been accomplished.

The judgment and order are reversed.

Beasly, J., *pro tem.*, and Zook, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 15, 1918.